McQUEEN CONTRACTING, INC.,
Plaintiff–Appellee,
Cross–Appellant,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendant–Appellant,
Cross–Appellee.

No. 87–4871.

United States Court of Appeals,
Fifth Circuit.

April 26, 1989.

David W. Mockbee, Walker W. Jones, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., for defendant-appellant, cross-appellee.

Robert C. Williamson, Jr. and Luther S. Ott, Jackson, Miss., for plaintiff-appellee, cross-appellant.

## ON PETITION FOR REHEARING

Before THORNBERRY, RUBIN and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

In accordance with the following discussion, appellee/cross-appellant McQueen's Petition for Rehearing is granted in part and denied in part. We hereby vacate Parts III, IV, and V of the court's original opinion and substitute the following therefor:

### III.

By way of cross-appeal, McQueen contends the trial court erred in denying its claim for prejudgment interest on the payment bond sum of $276,000. Mississippi courts allow prejudgment interest "where the amount due is liquidated when the claim is originally made, or where the denial of the claim is frivolous or in bad faith." *Aetna Casualty & Surety Co. v. Doleac Electric Co., Inc.*, 471 So.2d 325, 331 (Miss. 1985) (citations omitted). A claim is unliquidated if a legitimate dispute exists as to the amount due. *See Doleac*, 471 So.2d at 331; *O.J. Stanton & Co. v. Dennis*, 360 So.2d 669, 673 (Miss.1978).

The district court denied prejudgment interest on the sole ground that, had it not allowed the stacking of bonds, the three disputed contract payments would have offset the amount owing under the payment bond. The district court reasoned that disputes over whether these payments had been made and their effect on the payment bond rendered the claim on such bond unliquidated. Implicit in the district court's conclusion is the supposition that prejudgment interest would have been awarded had it found that the payment bond claim was liquidated. Based on the trial court's reasoning, we affirmed the denial of prejudgment interest in our original opinion.

F & D has since conceded that "a contract payment [would] not have the effect of reducing the penal sum of a payment bond." Instead, F & D argues that McQueen's pleadings require us to characterize the damages McQueen seeks as arising from a single claim and that the disputes concerning the alleged $39,654, $26,000, and $150,000 contract payments rendered the entire claim unliquidated. We, however, disagree with F & D's underlying premise and find that McQueen stated two claims, one under the performance bond

and one under the payment bond.[1] It is evident that, having found McQueen to have stated separate claims, the amount claimed under the payment bond remained undisturbed despite the court's findings regarding the contract payments. That is, even if the $215,000 in disputed contract payments had been fully credited against Hobbit Hill's underlying debt of approximately $552,000, there still would have remained an undisputed balance of $337,000. Because the undisputed portion of the underlying debt exceeded F & D's maximum exposure of $276,000 on the payment bond, we conclude that McQueen's payment bond claim was liquidated when originally made. We therefore hold that, given the circumstances of this case and the arguments briefed on appeal, McQueen is entitled to prejudgment interest on the principal amount of $276,000.

### IV.

McQueen also cross appeals the trial court's dismissal of its punitive damage claim. McQueen advances several theories supporting its entitlement to punitive damages because of F & D's refusal to make payments under the performance and payment bonds. At the outset of this discussion we note that in insurance litigation

'Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.' ... '[A]ny plaintiff asking for punitive dam-

ages ... based on bad faith of an insurance company has a heavy burden.' *Life & Casualty Insurance Co. of Tennessee v. Bristow*, 529 So.2d 620, 622 (Miss. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989). Under Mississippi law, a claim for punitive damages against an insurer will not go to the jury unless (1) there is a finding that the insurance company had no " 'legitimate or arguable reason to deny payment of the claim' "[2] and (2) the plaintiff has made a "showing of malice, gross negligence, or wanton disregard of the rights of the insured." *Id.* at 624.[3]

Our holding precluding McQueen from recovering under the performance bond indicates that F & D had a reasonably arguable basis for denying payment under that bond; therefore, the claim for punitive damages with respect to the *performance* bond cannot stand.

McQueen states various grounds to support its claim for punitive damages in connection with F & D's failure to pay on the payment bond. Because we find that F & D's defense of tender constituted an arguable basis for denying McQueen's claim, we need not address all of McQueen's arguments.[4]

McQueen does not contest the principle that F & D would have been discharged from its obligations arising from the terms of the payment bond if the principal, Hobbit Hill, had unconditionally tendered the full amount due to McQueen. To prove a

---

1. McQueen's original complaint demanded the lump sum amount of $552,000 which "represent[ed] the sum of the penal amount of the labor and material payment bond and the penal amount of the performance bond issued by Fidelity and Deposit." McQueen's amended complaint states the claims even more distinctly. Count I alleged a breach of the payment bond obligations while Count II alleged a breach of F & D's performance bond obligations. These complaints together with our recognition that the *Federal Rules of Civil Procedure* eschew many formalistic pleading requirements lead us to conclude that McQueen stated separate claims for recovery under each of the payment and performance bonds.

2. *Id.; see also, Szumigala v. Nationwide Mutual Insurance Co.,* 853 F.2d 274, 280 (5th Cir.1988).

3. Although we have recognized that, in many instances, an insurer's failure to pay without an arguable or legitimate reason may be tantamount to a wilful or grossly negligent refusal to pay, we remain cognizant of situations requiring the two standards to be separately analyzed. *See Merchants National Bank v. Southeastern Fire Insurance Co.,* 751 F.2d 771, 775 n. 3 (5th Cir.1985).

4. McQueen argues for the first time in its Reply to F & D's Response to the Petition for Rehearing that F & D's trial defenses cannot be relied upon as arguable bases for the denial of McQueen's claims. We, however, decline to consider arguments made for the first time at this late stage. *Dean v. Dean,* 837 F.2d 1267 (5th Cir.1988).

tender had been made, F & D put on several trial witnesses to recount the conversation which transpired at a meeting in Collins, Mississippi at which McQueen and Templeton Fowlkes, Hobbit Hill's president, attempted to resolve their differences. Based on the evidence adduced at trial and Fowlkes' deposition, the district court concluded that:

> there is no credible evidence that the sum owed was ever unconditionally tendered to McQueen, which is essential for a tender. *Mississippi and Power v. Ross,* [168 Miss. 400,] 150 So. 830 (Miss.1933). In his deposition dated May 14, 1985, Templeton Fowlkes stated that he 'offered to pay them with a check' (p. 2). However, Fowlkes later admitted that 'there was also a question of some other work that he had done on another project as an explanation of why the sum was not tendered to McQueen at that meeting. Further, a question of the amount of McQueen's attorney fees and whether Sage would contribute to the payment thereof was unresolved.

It is important to note that the district court made the above statement in the context of assessing F & D's underlying tender defense and not in the context of determining whether an arguable basis existed for asserting the defense. Nevertheless, McQueen now asserts that the language employed by the district court in denying the tender defense implies the lack of an arguable basis on which to assert the defense. We decline to equate the district court's finding of "no credible evidence" as to the unconditional nature of the tender with a finding of no evidence as to the legitimacy of the defense itself. Given that Mississippi courts do not favor punitive damages in insurance litigation, we hesitate to read new meaning into the district court's opinion that would increase the very likelihood of their imposition.

Furthermore, our independent review of the record and the legal principles underlying the tender defense indicate that F & D's evidence at least raises a factual dispute as to whether Fowlkes tendered the amount owing. That a check was not actually produced, that the attorney's fees offered were not accepted, and that a lien release agreement had to be drafted do not in all circumstances vitiate the unconditional nature of a tender. Clearly, where a factual dispute as to the applicability of a defense exists, it follows that such defense rests upon an arguable basis.

Lastly we point out that, assuming *arguendo* the lack of an arguable basis on which to assert the tender defense, McQueen's allegations and evidence are insufficient to satisfy the second prong of Mississippi's two-part test. The second prong requires McQueen to demonstrate "malice, gross negligence, or wanton disregard of the rights of the insured." Rather than offer proof on this issue, McQueen misinterprets dicta from this court as stating that satisfaction of the first prong renders superfluous the need to make such showing.[5] The Mississippi Supreme Court recently made clear that both prongs of the test remain viable. *See Bristow,* 529 So.2d at 624 ("Even if [the insurer did not have a reasonably arguable basis for denying the insured's claim, the insured] must clear the second part of the two-part test—he must make a showing of malice, gross negligence, or wanton disregard....").[6] The mere allegation that inferences of bad faith can be drawn from the insurer's nonpayment fails to clear this second hurdle.

In light of the above analysis and the Mississippi Supreme Court's promptings that punitive damage awards are to be affirmed "with extreme reluctance,"[7] we conclude that the trial court properly dismissed McQueen's punitive damage claims.

---

**5.** *See supra* note 3.

**6.** We recognize that the evidence advanced to prove the lack of an arguable basis may itself constitute a showing of malice, gross negligence, or wanton disregard. However, that the evidence overlaps does not eliminate the need to satisfy both prongs.

**7.** *Bankers Life & Casualty Co. v. Crenshaw,* 483 So.2d 254, 276 (Miss.1986), *aff'd on other grounds,* —— U.S. ——, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988).

## V.

For the foregoing reasons, we RE-VERSE in part, AFFIRM in part, and RE-MAND for a determination of prejudgment interest on the payment bond claim.